IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| KENNETH R. STEWART, et al., § | |
|     Plaintiffs, § | |
| § | |
| v. § | Civil Action No. 3:17-CV-3296-G-BK |
| § | |
| CITY OF IRVING, et al., § | |
|     Defendants. § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, the *Motion to Dismiss* filed by Defendants City of Irving, Irving Independent School District, Dallas County, Parkland Hospital District, Dallas County Community Hospital District, and Dallas County School Equalization Funds (collectively, the "Taxing Authorities"), Doc. 21, has been referred to the undersigned for a recommended disposition. For the reasons stated herein, the Taxing Authorities' motion should be **GRANTED** and Plaintiffs' claims **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

**A.    Background**

Plaintiffs Kenneth R. Stewart and Marco A. Montemayor bring this *pro se* action stemming from the foreclosure of tax liens encumbering their real property and resulting sale. The Taxing Authorities attach to their motion documents related to the foreclosure proceedings, which, for context, the Court takes judicial notice of and recounts herein. *See Reneker v. Offill*, No. 3:08-CV-1394-D, 2010 WL 1541350, at *5 (N.D. Tex. Apr. 19, 2010) (Fitzwater, C.J.) ("Courts may take notice of the judicial record in prior related proceedings.") (collecting cases).

In October 2016, the Taxing Authorities filed their third lawsuit against the business Crockett Concrete Co. Inc. a/k/a Triple C. Concrete Company, Inc. in the 192nd District Court of Dallas County, Texas, to recover delinquent property taxes, penalties, and interest.[1] Doc. 21 at 7, 16. The real property in question is located at 720 N. Main Street, Irving, Dallas County, Texas (the "Property"). Doc. 21 at 8. In September 2017, the state court awarded the Taxing Authorities $734,652.09, representing the unpaid taxes, penalties, interest, and fees that accrued on the Property between tax years 1994 and 2016. Doc. 21 at 8. Furthermore, to aid in the collection of the same, the court ordered the foreclosure of all tax liens encumbering the Property. Doc. 21 at 8-10; *see* TEX. TAX CODE ANN. § 33.41. In October 2017, the court entered an Order of Sale commanding the Sheriff of Dallas County, Texas to seize and sell the Property at auction. Doc. 21 at 42. On December 5, 2017, when no bids were placed, the Property was "struck off" to the City of Irving. Doc. 21 at 42.

On December 4, 2017, Plaintiffs filed the instant federal lawsuit against the Taxing Authorities, JP Morgan, and Texas Industries, Inc.[2] Doc. 1 at 1-2. Though convoluted, *Plaintiff's* [sic] *Original Petition for Fraud, Fraudulent Transfer, Wrongful Conveyance, Improper Discricption* [sic]*, Breech* [sic] *of Fidicuary* [sic] *Duties* makes clear that Plaintiffs filed this lawsuit to prevent the tax sale of the Property. *See, e.g.*, Doc. 1 at 2 (asserting cause of action for, *inter alia*, "Injunction to Tax Foreclosure Sale"), 5 (requesting that Defendants be

---

[1] Two other lawsuits were filed in 1997 and 2003. Doc. 21 at 9.

[2] On May 1, 2018, District Judge Fish accepted the undersigned's recommendation and dismissed Plaintiffs' claims against JP Morgan and Texas Industries, Inc. for failure to effect service of process as required by Rule 4 of the Federal Rules of Civil Procedure. Doc. 23; Doc. 29.

temporarily enjoined from, *inter alia*, selling the Property).  Plaintiffs also seek nearly $18 billion in damages.  Doc. 1 at 3.

  Thereafter, Plaintiffs filed two emergency motions for an injunction, premised on their assertion that the City of Irving wrongfully took title to the Property.  Doc. 7 at 2; Doc. 9.  Upon finding that Plaintiffs' motions failed to comply with the procedural requirements outlined in Rule 65 of the Federal Rules of Civil Procedure or address the relevant factors announced in *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011), the motions were denied.  Doc. 8; Doc. 11; Doc. 14; Doc. 16.

  In March 2018, the Taxing Authorities filed the instant motion to dismiss all of Plaintiffs' claims, arguing that, *inter alia*, the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, divests the Court of subject matter jurisdiction.  Doc. 21 at 3-4.  Although Plaintiffs filed a response, they failed to address or even acknowledge the Taxing Authorities' invocation of the TIA.  *See* Doc. 25 at 1-4.  Upon review, the Taxing Authorities' argument is well founded.

**B.** **Applicable Law**

  A court must dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure if it lacks the statutory or constitutional power to adjudicate the case.  *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998).  The TIA provides that "district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."  28 U.S.C. § 1341.  The TIA also applies to taxes imposed by municipalities.  *Home Builders*, 143 F.3d at 1010 n.6.  This prohibition reflects "the fundamental principle of comity between federal courts and state governments that is essential to 'Our Federalism,' particularly in the area of state taxation." *Fair Assessment in Real*

*Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 103 (1981) (citations omitted).  Thus, the TIA functions as "a broad jurisdictional impediment to federal court interference with the administration of state tax systems."  *ANR Pipeline Co. v. La. Tax Comm'n*, 646 F.3d 940, 946 (5th Cir. 2011).

**C.     Analysis**

To determine whether the TIA bars a lawsuit, courts must first ask if the plaintiff seeks to enjoin, suspend or restrain the assessment, levy, or collection of any tax under State law by examining the relief sought.  *Hibbs v. Winn*, 542 U.S. 88, 99-100 (2004).  As mentioned above, Plaintiffs sought to prevent the sale of the Property and obtain damages of approximately $18 billion.  The tax sale in question was used to recoup unpaid property taxes and is thus tantamount to the collection of a tax.  *See, e.g.*, *Rafaeli, LLC v. Wayne Cty.*, No. 14-13958, 2015 WL 3522546, at *10 (E.D. Mich. June 4, 2015) ("tax delinquency foreclosure sales are inexorably intertwined with the collection of past due taxes: they are the 'mode of collection'").  Indeed, the Texas Tax Code expressly authorizes tax sales as a means of collecting delinquent taxes.  TEX. TAX CODE ANN. §§ 33.41, 33.53.  Because Plaintiffs' lawsuit necessarily seeks to hinder the collection of taxes, it constitutes impermissible interference with the state tax system.  *See ANR Pipeline*, 646 F.3d at 946 (TIA barred suit seeking, *inter alia*, to enjoin ad valorem tax-assessment and collection proceedings because they "are the classic remedies that the [TIA] bars the federal courts from providing") (citation omitted); *Dillon v. Mississippi*, 376 F. App'x 421, 424 (5th Cir. 2010) (per curiam) ("Appellants expressly seek declaratory and injunctive relief from the application of Mississippi state tax law, as well as compensatory and punitive damages for past improper tax assessments.  These are precisely the kinds of relief barred by the [TIA].").

Accordingly, the TIA bars this Court from asserting jurisdiction, unless Texas fails to supply a plain, speedy, and efficient remedy for Plaintiffs' claims. *ANR Pipeline*, 646 F.3d at 947.

For a state remedy to satisfy the requirements of the TIA, it need only be "adequate," that is, it must provide the plaintiff "with a complete judicial determination that is ultimately reviewable in the United States Supreme Court." *Home Builders*, 143 F.3d at 1012. The Court of Appeals for the Fifth Circuit has held that Texas provides a "menu of remedies" that satisfy the TIA's requirements, and Plaintiffs do not argue to the contrary. *Dawson v. Childs*, 665 F.2d 705, 710 (5th Cir. 1982). For instance, Plaintiffs could (1) bring a declaratory judgment action under the Texas Uniform Declaratory Judgment Act, TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a); (2) seek injunctive relief from the tax assessments; or (3) pay the taxes, apply to the tax collector for a refund, and, in the event of a denial, file suit against the taxing unit in district court, TEX. TAX CODE ANN. § 31.11. *Dawson*, 665 F.2d at 710; *see also Scott v. Dallas Cty. Appraisal Dist.*, No. 3:02-CV-0584-D, 2002 WL 1798912, at *2 (N.D. Tex. Aug. 2, 2002) (Fitzwater, J.) ("Texas law provides procedural vehicles that afford taxpayers the opportunity to raise their serious federal constitutional questions.") (collecting cases). Whether the time for pursuing such remedies has lapsed is immaterial to the Court's query – all that matters is that the remedies did exist. *See, e.g.*, *Daytona Beach Racing & Recreational Facilities Dist. v. Volusia Cty.*, 579 F.2d 367, 369 (5th Cir. 1978) (per curiam) ("The plaintiffs cannot fail to take advantage of the state remedy and then litigate in federal court.").

In sum, because the relief that Plaintiffs seek would disrupt the administration of Texas' tax system, and a plain, speedy, and efficient remedy is available to Plaintiffs in state court, the TIA divests this Court of subject matter jurisdiction over Plaintiffs' claims. As such, all of Plaintiff's claims should be dismissed without prejudice.

### D.     Miscellaneous Relief Requested

Plaintiffs' response to the Taxing Authorities' motion to dismiss includes what appears to be Plaintiff Montemayor's separate motion for an emergency injunction. *See* Doc. 25 at 5-90. However, the motion and voluminous attachments thereto concern state court proceedings that resulted in the removal of his children from his custody and have no relation to the tax sale of the Property. *See* Doc. 25 at 5-90. Montemayor also later filed in this lawsuit a pleading titled *Petition for Return of Children*.[3] Doc. 26. In both his motion and petition, Montemayor asks the Court to overturn the state court judgment that removed his children from his custody. *See* Doc. 25 at 6 ("we ask the court to enter an injunction and the children be returned to parents immediately"); Doc. 26 at 2 (requesting "that the children be returned to parents"). This, however, the Court cannot do, as the *Rooker-Feldman* doctrine[4] prevents lower federal courts from reviewing, modifying, or nullifying final orders of state courts. *Weekly v. Morrow*, 204 F.3d 613, 615 (5th Cir. 2000). To the extent Montemayor is dissatisfied with the state court's ruling in this unrelated matter, his "recourse at the federal level is limited solely to an application for a writ of certiorari to the United States Supreme Court." *Id.* (citation and internal quotation marks omitted). Accordingly, Montemayor's motion and petition should likewise be denied without prejudice for lack of subject-matter jurisdiction. *See Brown v. Joseph*, No. A-13-CA-843-LY, 2014 WL 2168366, at *3 (W.D. Tex. May 23, 2014) (holding that *Rooker-Feldman* barred plaintiff's attempt to challenge the propriety of state court orders that terminated his parental rights and custody of his children).

---

[3] The Petition is also brought on behalf of, and signed by, Adelma L. McMahon, the mother of Mr. Montemayor's children.

[4] The doctrine takes its name from two Supreme Court decisions: *District of Columbia, Court of Appeals v. Feldman*, 460 U.S. 462 (1983), and *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923).

### E. Conclusion

For the reasons stated herein, the Taxing Authorities' *Motion to Dismiss*, Doc. 21, should be **GRANTED** and Plaintiffs' claims **DISMISSED WITHOUT PREJUDICE**.  Furthermore, Plaintiffs' *Emergency Motion for Injunction*, Doc. 25, and *Petition for Return of Children*, Doc. 26, be **DENIED WITHOUT PREJUDICE**.  As acceptance of this recommendation would dispose of all of Plaintiffs' claims, Defendants' remaining dispositive motions, Doc. 27; Doc. 30; Doc. 33, should be **DENIED AS MOOT**.

**SO RECOMMENDED** on June 7, 2018.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and identify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from 10 to 14 days).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

7